James MATTHEWS doing business as Upton Processing, and James Matthews doing business as Newcastle Pack, Appellant (Plaintiff),

v.

WYOMING DEPARTMENT OF AGRICULTURE, John Orton as Commissioner, Robert E. Fetzner, individually and as Director, and Douglas Krogman, individually and as Inspector, Appellees (Defendants).

No. 85–7.

Supreme Court of Wyoming.

May 16, 1986.*

Gordon W. Schukei, Cheyenne, for appellant.

Steven R. Czoschke of Sheehan, Stevens & Sansonetti, Gillette, for appellees.

Before THOMAS, C.J., and ROSE,** ROONEY,*** BROWN and CARDINE, JJ.

CARDINE, Justice.

James Matthews appeals from a summary judgment order issued by the district court in favor of the Wyoming Department of Agriculture and three of its employees. The district court held that the Wyoming Governmental Claims Act, §§ 1–39–101 through 1–39–119, W.S.1977, Cum.Supp. 1985, barred all of Matthews' claims for damages. We affirm in part and reverse in part.

## FACTS

Appellant Matthews operates a commercial meat processing plant in Upton, Wyoming under a state license which subjects him to regulation by the Wyoming Department of Agriculture. Sections 35–7–701 through 35–7–710, W.S.1977, Cum.Supp. 1985 (Wyoming Wholesome Meat Act of 1969). On July 25, 1984, appellant initiated this action against the department; its commissioner, John Orton; the administrator of the state meat inspection program, Robert Fetzner; and a meat inspector, Douglas Krogman. Orton was named in his official capacity while Fetzner and Krogman were sued in both their official and individual capacities. Appellant sought to enjoin all the appellees from restricting the use of his cooling facilities and animal holding pens, and from otherwise interfering with his operations. He also sought compensatory and punitive damages for loss of business.

On November 13, 1984, appellees filed a joint summary judgment motion supported by a memorandum and affidavits. The motion was limited to the action for damages and relied upon § 1–39–104(a), W.S.1977, Cum.Supp.1985, which states in part:

"A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112."

Appellees also discussed § 1–39–112, the law enforcement exception, which states:

"A governmental entity is liable for damages resulting from tortious conduct of law enforcement officers while acting within the scope of their duties."

Appellees argued that they enjoyed governmental immunity because they were public employees of a governmental entity and because none of the exceptions to § 1–39–104(a), including the law enforcement exception, applied. In their affidavits, appellees Orton, Fetzner and Krogman outlined their official duties, emphasizing that none of those duties involved law enforcement. But neither Fetzner nor Krogman, who were sued in their individual capacities, stated whether they were acting within the scope of their official duties when the alleged tortious acts took place. The only evidence involving the actions of Fetzner and Krogman appears in transcripts they gave at a hearing on a motion to dismiss and a hearing on appellant's preliminary injunction claim. Although these transcripts have been included in the record on appeal, they were not attached to appellees' summary judgment motion or otherwise available to the district court. Appellees never mentioned the prior hearings in their summary judgment motion or brief accompanying that motion. If the district court based its summary judgment on the testimony contained in the transcripts, the court did so purely from memory.

The district court granted injunctive relief to appellant but also granted summary judgment to all appellees on all of appellant's damage suits. Appellant has raised the propriety of the summary judgment on appeal.

## IMMUNITY UNDER THE GOVERNMENTAL CLAIMS ACT

■ Appellant has sued all the appellees, including the department, in their official capacities. A person acting in an official capacity is, by definition, acting within the scope of his duties. Therefore, the exception in § 1–39–104(a) which permits suit against governmental employees who act outside the scope of their duties cannot apply to these "official capacity" claims. The basic immunity language of § 1–39–104(a), supra, bars appellant's "official capacity" claims unless one of the other statutory exceptions to immunity applies.

The only exception that could arguably apply is the law enforcement exception, § 1–39–112, supra. Factually there is no genuine issue concerning the law enforcement aspects of appellees' duties. Appellees Orton, Fetzner and Krogman all submitted uncontradicted affidavits detailing their official duties. Commissioner Orton's affidavit is typical:

"5. I do not have the power under the Wyoming Statutes dealing with the Act, nor is it my duty under those statutes to hold in custody any person accused of a criminal offense or of a violation of the Act, or to arrest any person charged with committing a crime or a violation of the Act, nor is it one of my duties nor within my authority to maintain public order or to carry a weapon in the performance of my duties under the Act.

"6. That the Attorney General or the county and prosecuting attorney where the violation occurred has the responsibility pursuant to Wyoming Statute § 35–7–709 to charge persons with violations of the Act and to initiate criminal action under the Act."

■ Because the department can act only through its employees and because the department's liability in this case derives solely from the acts of the three individual appellees, there was no need for the department to submit additional affidavits detailing the law enforcement powers of the department as a whole.[1] The only official duties relevant to the department's liability in this case are the duties of the three individual appellees which were fully covered by their affidavits.

Once the appellees established their official duties as a matter of fact, they were entitled to summary judgment if, as a matter of law, those duties did not make them law enforcement officers. We recently interpreted the term "law enforcement officers," for purposes of § 1–39–112 to mean only those public officials charged with traditional peace-keeping duties. *Hurst v. State*, Wyo., 698 P.2d 1130, 1134 (1985).

■ It is clear from appellees' affidavits that they are not charged with traditional peace-keeping duties and are not law enforcement officers. They have no power to maintain public order, to carry a weapon, or to hold or arrest persons accused of violating the act. Criminal enforcement of the act is delegated entirely to either the attorney general or the county or prosecuting attorney where a violation occurs. The law enforcement exception of § 1–39–112 does not apply to appellees. The portion of appellant's suit claiming damages against appellees in their official capacities is barred by § 1–39–104(a). The district court

---

1. Even if we looked to the department's general statutory powers, we could not find any law enforcement duties. The Wyoming Wholesome Meat Act of 1969 empowers the commissioner of agriculture to issue licenses to meat slaughtering and processing plants, § 35–7–704, to inspect such facilities for compliance with statutory and regulatory standards, § 37–7–705, to segregate or destroy meat when appropriate, § 35–7–705(g) and (p), and to prohibit the use of unsanitary facilities, § 35–7–705(t). The commissioner is also authorized to employ or contract with persons to implement the provisions of the act. The department's statutory duties do not involve keeping the peace as that concept is generally understood.

properly granted summary judgment in favor of all appellees, including the department, to the extent they were sued in their official capacities.

### CONDUCT BY FETZNER AND KROGMAN OUTSIDE THEIR OFFICIAL DUTIES

In a summary judgment proceeding, the movant has " 'a definite burden to clearly demonstrate there is no genuine issue of material fact * * *.' " *Hickey v. Burnett*, Wyo., 707 P.2d 741, 744 (1985), quoting *Kover v. Hufsmith*, Wyo., 496 P.2d 908, 910 (1972).

"A material fact is one which, if proved, would have the effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties." *Colorado National Bank v. Miles*, Wyo., 711 P.2d 390, 393 (1985).

Until the movant has established that there is no issue of material fact requiring a trial, the non-moving party has no obligation to support his pleadings with affidavits or other evidence. *O'Donnell v. City of Casper*, Wyo., 696 P.2d 1278, 1287 (1985).

Appellant sued appellees Fetzner and Krogman in their individual as well as official capacities. He alleged in his complaint that they committed wrongful acts outside the scope of their authority as public employees:

"12. The defendant Robert E. Fetzner has falsely, maliciously and without any legal or statutory basis or authority and in excess of and beyond the scope of his employment, accused plaintiff of committing criminal acts.

\* \* \* \* \* \*

"14. The defendant Douglas Krogman and Defendant Robert E. Fetzner have subjected the plaintiff James Matthews to a continuing pattern of harassment in plaintiff's daily operations and use of plaintiff's facilities and further said defendants have unfairly, arbitrarily and capriciously and maliciously applied standards, without any legal or statutory basis or authority, on plaintiff's operations and facilities."

The Governmental Claims Act bars suit against governmental employees only to the extent that they act within the scope of their duties. Therefore, appellees Fetzner and Krogman were entitled to summary judgment on the claims against them in their individual capacities only if they could establish that they acted solely within their official duties when they dealt with appellant. But the affidavits filed by Fetzner and Krogman in support of their motion for summary judgment do not establish these material facts.

Appellees can supply the necessary material facts only if testimony from prior hearings in the case could be considered by the court at the summary judgment hearing. The prior testimony was presented at a preliminary injunction hearing and at a hearing on a motion to dismiss. At the preliminary injunction hearing the trial judge made it clear that he viewed appellees' testimony only in the context of the law of injunctions. He was looking for a risk of irreparable harm, inadequate remedy at law, and probability of success on the merits. And at the hearing on the motion to dismiss the judge correctly interrupted and disregarded appellee Fetzner's testimony because a motion to dismiss under Rule 12(b)(6), W.R.C.P. is based on the pleadings. The court accepts the averments in the pleadings as true. *Carbon County School District No. 2 v. Wyoming State Hospital*, Wyo., 680 P.2d 773 (1984). The judge ignored Fetzner's statement that he had acted within the scope of his authority, and he did not permit appellee Krogman to testify at all. The judge stated at the hearing on the motion to dismiss:

"This isn't a motion for summary judgment. * * * [E]verything that this man says in his complaint must be taken as true in a motion to dismiss. So you have to admit this. You have to admit that they acted arbitrarily and capriciously and were negligent in supervision. * * * I don't need any testimony."

It is clear that the judge did not evaluate the prior testimony under summary judgment standards. Whether he later recalled that testimony or relied upon it in the summary judgment context must be questioned.

Appellees did not file their motion for summary judgment until November 13, 1984, almost four months after the preliminary injunction hearing and two months after the hearing on the motion to dismiss. They never referred to the testimony from those hearings in their summary judgment motion or supporting memorandum. Instead, they stated that

"[t]he grounds upon which this motion are based are those as indicated in the attached Affidavits and Memorandum in Support of Motion for Summary Judgment."

They did not rely on the prior testimony which indicated that they acted within the scope of their authority because they thought that they were entitled to summary judgment without making that showing. They erroneously suggested that

"[t]he sole issue on which the Motion for Summary Judgment is based is whether the actions of the defendants can be considered actions of a law enforcement officer."

Even if appellees intended to rely upon the testimony from the prior hearings to support their summary judgment motion, they had to present that testimony to the district court in a form that would be admissible at trial.

In Wyoming

"[t]he material presented to the trial court as a basis for summary judgment should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial." *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419, 426 (1983).

"[T]estimony given at a hearing or trial that is prior to the summary judgment hearing * * * may * * * be utilized at the summary judgment hearing, provided the testimony is properly presented at the latter hearing." 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.11[8] at 56–295 (2nd ed. 1985). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2719 at 15–16 (1983); *Sturm Jewelry, Inc. v. First National Bank, Franklin*, Tex.Civ.App., 593 S.W.2d 813, 815 (1980).

If the prior testimony was not before the district court in admissible form, we cannot consider it in this appeal.

"The scope of appellate review of a summary judgment is to examine the judgment ' * * * in the same light as the district court, using the same material and information as did the district court.'" *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113, 115 (1985) (quoting *Lane Company v. Busch Development, Inc.*, supra).

Even if a court accurately recalls prior testimony, it would be unfair to allow summary judgment based on that testimony unless it is submitted with the summary judgment motion in admissible form, i.e., transcribed and authenticated. The party opposing summary judgment should have notice of the materials before the court so that he can prepare his defense to the motion. See *Nation v. Nation*, Wyo., 715 P.2d 198 (1986). Materials in the court's files, and affidavits, depositions and exhibits attached to the summary judgment motion fulfill this requirement. The only exception to the notice requirement involves oral testimony at the summary judgment hearing itself which most courts permit even though it can result in surprise to the non-moving party. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2723 at 62 (1983). Unlike testimony from prior hearings, the judge hears the summary judgment testimony with summary judgment standards in mind and can take notes on what he finds relevant.

We hold that in a summary judgment proceeding, a court may consider testimony from prior hearings only if that

testimony is transcribed and authenticated. *Sturm Jewelry, Inc. v. First National Bank, Franklin,* supra, 593 S.W.2d at 815. It must be submitted with the motion or already filed with the court. In this case, the transcripts of the preliminary injunction hearing and the hearing on the motion to dismiss were not before the district court when it considered the summary judgment motion. We cannot affirm the summary judgment based on what is in those transcripts.

■ It is possible, despite the affidavits which were the only materials properly before the court, that Fetzner and Krogman acted outside the scope of their duties. In that case, the governmental immunity defense of § 1–39–104(a), supra, does not protect them because it only applies to employees acting within the scope of their duties. The district court improperly granted summary judgment to Fetzner and Krogman in their individual capacities. The suits against Fetzner and Krogman were properly dismissed on summary judgment only to the extent that they were sued in their official capacities.

### RESPONSE TO OPINION CONCURRING IN PART AND DISSENTING IN PART

It is stated in Justice Rooney's concurring and dissenting opinion that we hold appellees Fetzner and Krogman are "liable individually because there is no averment that they were acting in their official capacities." Our opinion does not hold them "liable" but merely states that they are not entitled to summary judgment in their favor upon the record before the court. We recognize that in all probability there will be a new motion for summary judgment containing the necessary allegations. But we do not see that as a waste of judicial time and expense. It would be a sorry state of affairs if a court could grant summary judgment without any evidentiary basis simply because it thought that the motion could ultimately be supported by evidence. No rule provides for that kind of procedure.

Summary judgment is affirmed as to all appellees in their official capacities but reversed as to appellees Fetzner and Krogman in their individual capacities.

THOMAS, Chief Justice, concurring in part and dissenting in part.

I am in accord with that portion of the majority opinion which affirms the summary judgment entered in favor of the State and its officers. There is an additional reason for affirming that summary judgment. The complaint does not allege that Matthews ever filed a claim against the State as required by § 1–39–113, W.S.1977, and the record does not disclose that such a claim was filed. The requirement for a claim is a condition precedent to suit. *Board of Trustees of University of Wyoming v. Bell,* Wyo., 662 P.2d 410 (1983); *Awe v. University of Wyoming,* Wyo., 534 P.2d 97 (1975). The failure to file such a claim is a jurisdictional defect. *Board of Trustees of University of Wyoming v. Bell,* supra; *Utah Construction Company v. State Highway Commission,* 45 Wyo. 403, 19 P.2d 951 (1933). Even though this defect was not relied upon by the defendant, I am of the view that this court should recognize jurisdictional defects and dispose of cases on that basis when they are present. *Board of Trustees of University of Wyoming v. Bell,* supra, and cases cited therein. I therefore concur in the majority disposition as to the State of Wyoming and its officers.

I cannot agree, however, with the aspect of the majority opinion which reverses the summary judgment entered in favor of Krogman and Fetzner in their individual capacities. I join Justice Rooney in his opinion, and I also submit some additional observations.

In material part Matthews' complaint alleges that:

"3. On or about February 6, 1984, defendant Douglas Krogman inspected the premises known as Upton Processing.

"4. Pursuant to instructions from, and at the direction of and under the supervi-

sion of defendant Robert E. Fetzner, defendant Douglas Krogman tagged the kill floor portions of the plaintiff's premises as rejected.

"5. On or about February 7, 1984, the said tag was removed and the plaintiff continued meat processing operations.

"6. On or about February 8, 1984, defendant Douglas Krogman inspected the said premises.

"7. Pursuant to instructions from defendant Robert E. Fetzner, the defendant Douglas Krogman tagged the cooler and kill chute portion of the said premises as rejected and imposed a restriction of 14 carcasses in the cooler.

"8. On or about February 29, 1984, the said tag was removed and plaintiff continued operations.

"9. On or about February 29, 1984, pursuant to the instructions of defendant Robert E. Fetzner, defendant Douglas Krogman lifted the restriction of 14 carcasses to 16 carcasses.

"10. Since February 9, 1984, the defendant Douglas Krogman, by and through and pursuant to the instructions of defendant Robert E. Fetzner, has arbitrarily inspected the premises and subjected the plaintiff to unreasonable and excessive standards of sanitation and has imposed an arbitrary and illegal restriction on the number of carcasses in the plaintiff's cooler.

"11. The defendant Douglas Krogman, by and through the action of defendant Robert E. Fetzner, has ordered plaintiff to remove property not on his premises and belonging to other persons.

"12. The defendant Robert E. Fetzner has falsely, maliciously and without any legal or statutory basis or authority and in excess of and beyond the scope of his employment, accused plaintiff of committing criminal acts.

"13. The defendant Robert E. Fetzner has stated he would take away the plaintiff's license to do business in the State of Wyoming.

"14. The defendant Douglas Krogman and Defendant Robert E. Fetzner have subjected the plaintiff James Matthews to a continuing pattern of harassment in plaintiff's daily operations and use of plaintiff's facilities and further said defendants have unfairly, arbitrarily and capriciously and maliciously applied standards, without any legal or statutory basis or authority, on plaintiff's operations and facilities.

"15. The aforementioned actions of defendant Douglas Krogman and defendant Robert E. Fetzner are arbitrary, capricious and malicious, and are without any legal or statutory basis or authority, and plaintiff is entitled to punitive damages."

The answer of the defendants encompasses the following affirmative defenses:

"1. The defendants as an affirmative defense would state that the action against the defendants is prohibited by the Wyoming Constitution, Article 1, Section 8, based upon the Doctrine of Sovereign Immunity.

"2. That the action against the defendants is barred by the Wyoming Governmental Claims Act and that the actions of the defendants fail to fall within any of the statutory exceptions to said act.

"3. That the individually named defendants at all times relevant hereto were acting within the scope of their employment and pursuant to statutory authority, and are therefore immune from liability."

These pleadings structure an issue of fact as to whether Fetzner and Krogman acted within the scope of their employment.

There were three hearings which have a bearing upon this issue. First there was a hearing on an application for a preliminary injunction at which the court took testimony and at which exhibits were introduced. This was followed by a hearing on defendant's motion to dismiss. Finally the court held a hearing on the motion for summary judgment. In arguing the motion to dismiss, Matthews' attorney substantially conceded that Krogman and Fetzner were at all times relevant to the complaint acting within the scope of their employment. He

persisted in arguing, however, that the two were individually liable. The defendants presented testimony and argued from that testimony that they were not individually liable. This testimony was cut off by the trial court with the assertion that it didn't have anything to do with the case. Implicitly this was a recognition of the fact that Fetzner and Krogman had acted within the scope of their employment. The balance of that hearing was concerned with the question of whether the State and its officers fell within the statutory exception to immunity provided for health care providers in § 1–39–110, W.S.1977. The trial court denied the motion to dismiss indicating that, although the department was not a health care provider, he thought perhaps it was subject to the law enforcement exception which would permit Matthews' action under § 1–39–112, W.S.1977.

Because the scope of the matter had been limited in this way the argument on the motion for summary judgment was addressed to the proposition that Fetzner and Krogman were not law enforcement officers. The supporting documents were tailored to support this proposition. The affidavits which are found by the majority to be insufficient to justify summary judgment for Fetzner and Krogman read as follows. Fetzner's affidavit says:

"2. That pursuant to statutory authority and the rules and regulations of the State Board of Agriculture, I am empowered and directed to carry out certain provisions of the Wyoming Wholesome Meat Act in conjunction with the Federal Meat Inspection Act.

"3. My duties require me to be involved in the license issuing process, the inspection program for licensed meat premises within the State of Wyoming, and to take certain action only pursuant to statutory authority against any operation not in compliance with the statutes and the rules and regulations of the State Board of Agriculture."

Krogman's affidavit recites:

"2. That pursuant to statutory authority and the rules and regulations of the State Board of Agriculture, I am empowered and directed to carry out the provisions of the Wyoming Wholesome Meat Act in conjunction with the Federal Meat Inspection Act.

"3. My duties require me to be involved in the license issuing process, the inspection program for licensed meat premises within the State of Wyoming, and to take action pursuant to statutory authority against any operation not in compliance with the statutes and the rules and regulations of the State Board of Agriculture."

These affidavits can be read fairly to say in substance, "In the course of my official duties I was authorized to do the things I am alleged to have done." This is a sufficient statement of fact by affidavit to refute the conclusory allegations of Matthews' complaint that these individuals acted outside the scope of their employment or without authority. The burden then shifted to the plaintiff to submit affidavits demonstrating in which particulars these individuals exceeded their authority. Matthews failed to do this, and a summary judgment for these defendants was proper.

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but * * * must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), W.R.C.P.

This rule has been followed with respect to summary judgments in Wyoming for more than 20 years. *Vipont Mining Company v. Uranium Research and Development Company*, Wyo., 376 P.2d 868 (1962); *Matter of Estate of Wilson*, Wyo., 399 P.2d 1008 (1965). These affidavits, when read in the light of the conclusory complaint (which charges Krogman with acting pursuant to the instructions of Fetzner) and the answer, are sufficient to support the summary judgment in the absence of counter-affidavits from Matthews.

Furthermore, if I found it to be necessary in order to dispose of this case I would

hold that the material facts from the testimony presented at the prior hearings can be relied upon in connection with the summary judgment. To the extent that the majority opinion is concerned with a problem of notice, the defendants' Memorandum in Support of Motion for Summary Judgment refers to the hearing on the motion to dismiss and that hearing was mentioned by both attorneys at the hearing on the summary judgment motion. The authorities cited in support of the proposition that testimony from a prior hearing in the same proceeding can be utilized on a summary judgment only if it is transcribed and certified and properly noticed are distinguishable. I have no quarrel with the proposition set forth in the majority opinion that "[t]he material presented to the trial court as a basis for summary judgment should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial. *Newton v. Misner,* Wyo., 423 P.2d 648 (1967)." *Lane Company v. Busch Development, Inc.,* Wyo., 662 P.2d 419, 426 (1983). I must disagree with the proposed extension of the rule to these facts. In *Lane* the court was confronted with an unsworn affidavit. In *Newton v. Misner,* supra, the affidavits encompassed irrelevant data, conclusions and other impermissible material. The court held that such materials which were neither carefully tailored nor professionally correct enough to be admissible at trial should be stricken. Neither case addresses the facts involved in this instance in which prior testimony in the same proceeding in which the same judge and the same attorneys participated was relied upon. There does not seem to be any defect in that prior testimony which would cause it to be inadmissible at trial.

Certainly *Sturm Jewelry, Inc. v. First National Bank, Franklin,* 593 S.W.2d 813, 815 (Tex.Civ.App.1980) is distinguishable. That case was decided pursuant to a procedural rule which "provides that no oral testimony shall be received at the hearing on a motion for summary judgment" together with a ruling of the state supreme court that, consequently, testimony from a prior hearing could be considered only where it was properly transcribed and certified before the court when the summary judgment motion was heard. Wyoming does not have such a provision in its rule, and in fact the trial court has discretion to permit oral testimony at the summary judgment hearing. *Dudley v. East Ridge Development Company,* Wyo., 694 P.2d 113 (1985). In Wright & Miller, Federal Practice & Procedure: Civil § 2723, the authors note that the practice of taking oral testimony at a summary judgment hearing should be exercised "sparingly and with great care," lest the hearing become a preliminary trial or lest surprise and disadvantage result. "[W]hen testimony taken at an earlier stage in the case is sought to be used, there is little danger of the hearing turning into a 'preliminary trial,' and therefore it should be more freely permitted once the testimony has been properly introduced." Id. Certainly in this instance the former testimony could not have been any surprise to Matthews.

I would hold that the prior testimony could be relied upon by the court to settle any apparent issue of facts for purposes of summary judgment even though the trial court did not specifically articulate his reliance. There is no question that we can uphold the trial court's action for any correct reason appearing from the record. *Litzenberger v. Merge,* Wyo., 698 P.2d 1152 (1985); *Hurst v. State,* Wyo., 698 P.2d 1130 (1985).

Finally the exhibits that were introduced at the prior hearing were properly before the court as part of the record at the time the summary judgment motion was heard. Defendants' Exhibit A, "Wyoming Wholesome Meat Act of 1969 and Regulations; Wyoming Inedible Meat Rendering and Processing Act of 1969 and Regulations," (1980), and United States Department of Agriculture "Layout Guide for Small Meat Plants," Table 2., provide the trial court and this court with sufficient information to permit a decision that the factual allegations of the complaint that Fetzner and Krogman had acted outside the scope of

their employment were incorrect. Thus there was no genuine issue of fact with respect to those allegations. The summary judgment in favor of *Krogman* and *Fetzner* should be affirmed.

ROONEY, Justice, concurring in part and dissenting in part, with whom THOMAS, Chief Justice, joins.

I concur with that part of the majority opinion which affirms the summary judgment against the Wyoming department of agriculture and appellee John Orton and that part of such opinion which recognizes that appellees Fetzner and Krogman are not law enforcement officers so as to be within the § 1–39–112, W.S.1977, 1985 Cum.Supp.,[1] exception to the grant of immunity to them while acting in the scope of their duties.[2] I dissent from that part of the majority opinion which reverses the summary judgment in favor of appellees Fetzner and Krogman.

I agree with the majority opinion in that we review the propriety of a trial court's action on a summary judgment from the same standpoint as did the trial court. *Rompf v. John Q. Hammons Hotels, Inc.,* Wyo., 685 P.2d 25 (1984); *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983); *Lane Company ex rel. Lane v. Busch Development, Inc.,* Wyo., 662 P.2d 419 (1983). In doing so, I do not agree with the majority opinion that the affidavits before the trial court failed to reflect appellees were acting solely within their official duties when they dealt with appellant.

It seems strange to hold that the action is barred against appellees for actions taken by them in their official capacities and then hold that they are liable individually because there is no averment that they were acting in their official capacities. Part of the lawsuit is a claim against appellees for action in their official capacities. As recognized in the majority opinion, "A person acting in an official capacity is, by definition, acting within the scope of his duties." The majority opinion acknowledges the official duty status of appellees in upholding the summary judgment against appellees insofar as the action is against them in their official capacities. The appellant recognizes the same in his complaint, and the same is inherent in appellees' affidavits wherein they contend their actions to have been clothed with immunity since they were not within the exception to such as law enforcement officers.

District judges should not be expected to close their eyes to reason. The district judge did not do so in this instance.

Upon return of this case to the district court, the new motion for a summary judgment will contain the averment of action within the scope of their official duties, and the summary judgment will follow. Such is a waste of judicial time and expense.

I believe the fact that the action was within the scope of appellees' duties was adequately expressed in that before the trial court when it acted on the motion for summary judgment. That required in Rule 56(c), W.R.C.P.,[3] was sufficiently before the trial court for the granting of the motion.

I would affirm in all respects.

---

1. Section 1–39–112, W.S.1977, 1985 Cum.Supp., provides:

   "A governmental entity is liable for damages resulting from tortious conduct of law enforcement officers while acting within the scope of their duties."

2. Section 1–39–104(a), W.S.1977, 1985 Cum. Supp., provides in pertinent part:

   "A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112. * * *"

3. Rule 56(c), W.R.C.P., provides in pertinent part:

   "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"